UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RAYMOND G. GABRIEL and | : | |
| KIMBERLY A. GABRIEL, | : | |
| | : | CASE NO.: 3:14-cv-01435-VAB |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | SEPTEMBER 28, 2015 |
| LIBERTY MUTUAL FIRE | : | |
| INSURANCE COMPANY | : | |

## RULING ON MOTION TO DISMISS

**I.     INTRODUCTION**

Plaintiffs, Raymond G. Gabriel and Kimberly A. Gabriel (the "Gabriels"), filed this action against their homeowner's insurance provider, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), for its alleged failure to pay for damage to the basement walls of their home.  The Complaint contains three counts.  Count One alleges breach of contract, Count Two alleges breach of the implied covenant of good faith and fair dealing, and Count Three alleges violations of the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. § 38a-815, *et seq.* ("CUIPA") and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq.* ("CUTPA").  Liberty Mutual moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted.  For the following reasons, the motion is DENIED.

**II.    FACTUAL ALLEGATIONS**

The Complaint sets forth the following allegations, which the Court must accept as true at this stage.  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

1

The Gabriels bought a house in 2006 and insured it with a homeowner's policy (hereinafter "the policy") issued by Liberty Mutual.  Compl. ¶¶ 4-5, ECF No. 1.  The house was built in 1986.  *Id.* ¶ 4.  The Gabriels noticed horizontal and vertical cracks throughout their concrete basement walls.  *Id.* ¶ 8.  A contractor told the Gabriels that the cracking was due to a chemical compound in the concrete that, when mixed with water, sand, and cement, oxidizes and expands, breaking the bonds of the concrete and "reducing it to rubble."  *Id.* ¶¶ 10-11.  The compound was used in basement walls constructed in the late 1980s and early 1990s, and the concrete most likely came from the J.J. Mottes Concrete Company.  *Id.* ¶ 10.  At some point between when the walls were poured and when the Gabriels discovered the cracks, the walls suffered a substantial impairment to their structural integrity.  *Id.* ¶ 13.

The Gabriels first discovered the cracks in May of 2014 and notified Liberty Mutual on June 13, 2014.  *Id.* ¶ 16.  Liberty Mutual denied coverage in a letter dated July 22, 2015, contending that the policy does not cover "inherent vice or latent defect."  *Id.* ¶ 18.

The Gabriels allege that Liberty Mutual has a general practice of convincing insureds that the collapse of basement walls caused by hidden decay or defective materials or methods of construction is not covered, and has joined an industry-wide practice of denying coverage for claims based on concrete defects.  *Id.* ¶¶ 33, 45, 47-50.

The Gabriels also allege that Liberty Mutual participates in the Insurance Services Office, Inc. ("ISO"), a cooperative that collects data regarding insurance claims, drafts policy provisions, and interprets those provisions.  *Id.* ¶¶ 38-39.  Through its participation in the ISO, Liberty Mutual allegedly knows of insurance claims in northeastern

Connecticut involving hidden decay in concrete basement walls, knows that most insurers deny those claims on the ground that the condition is caused by excluded causes, and knows of precedents where plaintiffs prevailed against insurers on defective concrete claims involving identical policy language.  *Id.* ¶¶ 41-43.

The Gabriels claim that Liberty Mutual breached the policy by denying coverage, and as a result, the Gabriels suffered financial loss.  *Id.* ¶ 21.  The Gabriels have not made any repairs to their basement walls.  *See id.* ¶ 22.  However, they allege that "[i]t is only a question of time" until their basement walls, and in turn their entire home, "fall in."  *Id.* ¶¶ 14-15.  Based on estimates from contractors, they expect to pay at least $225,000.00 to repair the basement walls, and perform related restoration work on the deck, landscaping, driveway and walks.  *Id.* ¶ 22.

### III.  STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must state a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

In determining whether the plaintiff has met this standard, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the non-moving party, *In re NYSE Specialists Sec. Litig.*, 503 F.3d at 95, and generally may consider only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

## IV.   DISCUSSION

### A.   Count One: Breach of Contract

The elements of a breach of contract claim are (1) formation of an agreement, (2) performance by one party, (3) breach by the other party, and (4) damages. *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 87 A.3d 534, 540 (Conn. 2014).

There is no dispute that the first, second, and fourth elements are alleged plausibly. The Gabriels allege that they entered into, and performed under, the policy. Compl. ¶¶ 5-6. They further allege that they suffered financial loss as a result of Liberty Mutual denying coverage, and that repairs will cost at least $250,000. *Id.* ¶¶ 21-22.

Liberty Mutual contends that the third element, however, is not satisfied. Specifically, Liberty Mutual argues that the alleged damage to the basement walls is not covered, and therefore its refusal to pay for that damage is not a breach. *See* Def.'s Mem. Supp. Mot. Dismiss at 6, ECF No. 13-1. The Gabriels counter that the relevant policy language is ambiguous and that dismissal is therefore inappropriate. *See* Pls.' Mem. Opp. Def.'s Mot. Dismiss at 3, ECF No. 16. The Court agrees with the Gabriels.

An insurance policy is interpreted under the same rules that govern the construction of any written contract. *Zulick v. Patrons Mut. Ins. Co.*, 949 A.2d 1084, 1088 (Conn. 2008). The Court must determine the intent of the parties as expressed by the language of the policy. *Id.* Provisions of an insurance policy "must be construed as laymen would understand [them] and not according to the interpretation of sophisticated underwriters and . . . the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view." *Vermont Mut. Ins. Co. v. Walukiewicz*, 966 A.2d 672, 678 (Conn. 2009) (quoting *Conn. Med. Ins. Co. v. Kulikowski*, 942 A.2d 334, 344 (Conn. 2008)).

Where the language of an insurance policy is unambiguous, the Court gives the language its natural and ordinary meaning. *Zulick*, 949 A.2d at 1088. "[L]anguage is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion." *Poole v. City of Waterbury*, 831 A.2d 211, 224 (Conn. 2003). Language is ambiguous, however, if it is "susceptible to more than one reasonable interpretation." *Id.* "[A]ny ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy." *Lexington Ins. Co. v. Lexington Healthcare Grp., Inc.*, 84 A.3d 1167, 1173 (Conn. 2014) (quoting *Johnson v. Conn. Ins. Guar. Ass'n*, 31 A.3d 1004, 1007 (Conn. 2011)).

The policy language at issue states that Liberty Mutual will "insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following: . . . Hidden decay; . . . Use of defective material or methods in construction, remodeling or renovation if the collapse

5

occurs during the course of the construction, remodeling or renovation." Compl., Ex. A at 5 of 16. It further states that "[l]oss to . . . foundation, retaining wall . . . is not included . . . unless the loss is a direct result of the collapse of a building. Collapse does not include settling, cracking, shrinking, bulging or expansion." *Id.*

Liberty Mutual argues that the basement walls are part of the "foundation" or are "retaining wall[s]," and therefore there is no coverage because the cracks were not a direct result of the collapse of the Gabriels' house. Def.'s Mem. Supp. Mot. Dismiss at 6, ECF No. 13-1. The Gabriels counter that the terms "foundation" and "retaining wall" are ambiguous. Pls.' Mem. Opp. Def.'s Mot. Dismiss at 3, ECF No. 16.

This Court has held several times in recent cases involving nearly identical facts and policy language that the terms "foundation" and "retaining wall" are ambiguous. *Bacewicz v. NGM Ins. Co.*, No. 3:08-cv-1530 (JCH), 2010 WL 3023882, at *1-4 (D. Conn. Aug. 2, 2010) (in case involving cracks in concrete basement walls caused by chemical compound within concrete, court held that the term "foundation" in identical policy language was "reasonably susceptible to more than one reading"); *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 115-16 (D. Conn. 2014) (in case involving nearly identical facts, policy language, and arguments, court held that the terms "foundation" and "retaining wall" were ambiguous, and denied motion to dismiss breach of contract claim); *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 164 (D. Conn. 2014) (same).[1]

---

[1] Liberty Mutual argues that *Bacewicz* and its progeny were wrongly decided. *See* Def.'s Mem. Supp. Mot. Dismiss at 7-9, ECF No. 13-1. First, it argues that "[t]he sole authority cited by Judge Hall in her decision in the *Bacewicz* litigation was the Alabama Supreme Court decision of *Turner v. State Farm Fire and Casualty Cos.*, 614 So.2d 1029 (Ala. 1993)." *Id.* at 7. That is incorrect. *See generally Bacewicz*, 2010 WL 3023882. Second, Liberty Mutual argues that the Court's reliance on *Turner* was misplaced because *Turner* was factually distinguishable. ECF No. 13-1 at 7. This Court's decision in *Bacewicz* did not hinge on *Turner*. The Court merely noted that "at least one other court considering a similar question" had held that a reasonable juror could find that foundation means only the piece of concrete beneath a wall and not the concrete basement wall itself. *Bacewicz*, 2010 WL 3023882, at *4. The Court went on to reach its own

The same conclusion is appropriate here.  The term "foundation" is ambiguous because it is reasonably susceptible to the Gabriels' interpretation to mean footings under the basement walls that support the entire structure or the lowest-load bearing part of the building, ECF No. 16 at 7, and to Liberty Mutual's interpretation to mean a concrete structure, including basement walls, that supports a building from underneath, ECF No. 13-1 at 6, 8-9.  *Belz*, 46 F. Supp. 3d at 163-64 (holding that "foundation" was reasonably susceptible to same two interpretations advanced here and therefore ambiguous).

Likewise, the term "retaining wall" is ambiguous because it is reasonably susceptible to the Gabriels' interpretation to mean a freestanding wall that holds in place a mass of earth, ECF No. 16 at 11, and to Liberty Mutual's interpretation to mean a wall built to resist lateral pressure or prevent an earth slide, ECF No. 13-1 at 12.  *Belz*, 46 F. Supp. 3d at 163-64 (holding that "retaining wall" was reasonably susceptible to same two interpretations advanced here and therefore ambiguous).  Because these terms are ambiguous, the Court construes them in the Gabriels' favor, *Lexington Ins. Co.*, 84 A.3d at 1173, and concludes that the Gabriels have alleged plausibly that coverage exists for the damage to their basement walls and that Liberty Mutual breached the policy by denying coverage.  *See* Compl. ¶¶ 19-21.

Liberty Mutual also argues that the breach of contract claim fails because the Gabriels do not allege sufficiently when the loss occurred.  ECF No. 13-1 at 13-14.  But the Complaint alleges that the substantial impairment to the walls' structural integrity

---

conclusion about the ambiguity of the term "foundation" in light of a witness's deposition testimony and the conclusion that footings could "collapse."  *Id.*  Moreover, the factual distinction that Liberty Mutual draws (the basement walls in *Turner* were free standing when constructed and were subsequently surrounded by dirt to make a basement, whereas the basement walls in this case existed since the original construction of the Gabriels' house) does not undercut *Turner's* persuasiveness.  The *Turner* court's decision did not turn on the fact highlighted by Liberty Mutual, and the policy language at issue in *Turner* was nearly identical to that at issue in *Bacewicz, Belz, Karas*, and this case.

occurred "[a]t some point between the date on which the basement walls were poured and the month of May, 2014." Compl. ¶ 13. The period covered by the policy is within that span. Thus, the Gabriels have raised their right to relief above the speculative level on the question of whether the loss occurred during the period covered by the policy. *Karas*, 33 F. Supp. 3d at 116 (where plaintiffs alleged that substantial impairment occurred at some point between time pouring of basement walls and discovery of cracks, and period covered by insurance policy was within that span, plaintiffs plausibly alleged breach of insurance policy); *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Finally, the Court declines Liberty Mutual's request to certify to the Connecticut Supreme Court the question, "Are the terms 'foundation' and 'retaining wall' as used in a homeowners insurance policy ambiguous?" ECF No. 13-1 at 18. Connecticut law grants the Connecticut Supreme Court authority to answer a question of law certified to it by this Court if the answer may be determinative of an issue and there is no controlling state authority, but does not require this Court to certify such a question. *See* Conn. Gen. Stat. § 51-199b(d). This Court is satisfied that it is capable of making a sound decision, in light of the applicable authorities, that the terms "foundation" and "retaining wall" are ambiguous in the context of the policy language at issue in this case. *Belz*, 46 F. Supp. 3d at 164 (declining to certify to Connecticut Supreme Court question whether term 'foundation' is ambiguous on same grounds).

Liberty Mutual's motion to dismiss Count One is denied.

### B. Count Two: Breach of the Implied Covenant of Good Faith and Fair Dealing

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Warner v. Konover*, 553 A.2d 1138, 1140 (Conn. 1989). The duty requires that "neither party do anything that will injure the right of the other to receive the benefits of the agreement." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 849 A.2d 382, 388 (Conn. 2004) (internal quotation marks and citation omitted). "To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." *Id.* "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." *Id.*

The Gabriels allege that Liberty Mutual, when it denied coverage, ignored state and federal case law concluding that the term "foundation" is ambiguous, and intentionally cited inapplicable policy language to mislead the Gabriels into thinking that their claim was not covered in order to preserve Liberty Mutual's assets. *See* Compl. ¶¶ 26-30.

Read in the light most favorable to the Gabriels, these allegations state a claim for breach of the implied covenant of good faith and fair dealing because they give rise to a plausible inference that Liberty Mutual acted to mislead the Gabriels, or neglected to fulfill a duty to provide coverage out of a self-interested motive. Substantially similar

9

allegations survived motions to dismiss in *Belz*, 46 F. Supp. 3d at 165 and *Karas*, 33 F. Supp. 3d at 116-17. Liberty Mutual's motion to dismiss Count Two is denied.

### C. Count Three: Violation of CUIPA and CUTPA

In Count Three, the Gabriels allege that Liberty Mutual is engaged in a general practice of denying claims arising out of concrete decay, and that that practice violates CUIPA and therefore violates CUTPA. Compl. ¶¶ 49-53.

A plaintiff may assert a CUTPA claim based on a violation of CUIPA. *Karas*, 33 F. Supp. 3d at 117 (citing *McCulloch v. Hartford Life & Acc. Ins. Co.*, 363 F. Supp. 2d 169, 181 (D. Conn. 2005) and *Mead v. Burns*, 199 Conn. 651, 663 (1986)). To prevail on such a claim, the plaintiff must show that the defendant engaged in an act prohibited by CUIPA and the act proximately caused the plaintiff's harm. *Belz*, 46 F. Supp. 3d at 165 (citing *McCulloch*, 363 F. Supp. 2d at 181). "A claim of unfair settlement practice under CUIPA/CUTPA requires the plaintiff to allege that the defendant has committed the alleged proscribed act with sufficient frequency to indicate a general business practice. . . . The plaintiff must show more than a single act of insurance misconduct . . . ." *Karas*, 33 F. Supp. 3d at 117.

The Gabriels allege that Liberty Mutual gave them a false and misleading reason for denying coverage by citing inapplicable policy language, and failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of their claim. Compl. ¶¶ 44-46. They further allege that this alleged misconduct caused them to lose money. *Id.* ¶ 53. These allegations satisfy the requirements to allege that the defendant engaged in an act prohibited by CUIPA, *see* Conn. Gen. Stat. § 38a-816(6), and that the act proximately caused the plaintiff's harm. Furthermore, the Gabriels allege that Liberty Mutual and

related entities have denied coverage in at least four other cases involving similar facts and identical policy language. These allegations support a plausible inference that Liberty Mutual has engaged in an unfair settlement practice with sufficient frequency to indicate a general business practice. *Karas*, 33 F. Supp. 3d at 117 (denying motion to dismiss CUIPA/CUTPA claim where plaintiffs alleged that Liberty Mutual denied coverage in three similar instances); *Belz*, 46 F. Supp. 3d at 167 (same).

## V.     CONCLUSION

For the foregoing reasons, Liberty Mutual's motion to dismiss (ECF No. 13) is DENIED.

SO ORDERED at Bridgeport, Connecticut this twenty-eighth day of September, 2015.

        /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE